UNITED STATES of America,
Plaintiff-Appellee,

v.

Larry Dean SHORT, Defendant-
Appellant.

No. 73-2748.

United States Court of Appeals,
Ninth Circuit.

March 18, 1974.

Steven M. Kipperman (argued) Kipperman, Shawn & Keker, San Francisco, Cal., for defendant-appellant.

Brian B. Denton, Asst. U. S. Atty. (argued), James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before KOELSCH and DUNIWAY, Circuit Judges, and GRAY,* District Judge.

## OPINION

DUNIWAY, Circuit Judge:

Short was convicted under both counts of an indictment and sentenced to three years on each count. The sentences are concurrent. Count One charged bank robbery, under 18 U.S.C. § 2113(a); Count Two charged that, in committing the offense, Short assaulted or put in jeopardy the life of a teller by the use of a dangerous weapon, a handgun, 18 U.S.C. § 2113(d).

█ Under our decision in United States v. Faleafine, 9 Cir., 1974, in banc, 492 F.2d 18 (1974), the two counts charged but one offense, the Count One offense, aggravated by the conduct charged in Count Two. See the cases cited in *Faleafine, supra,* and United States v. Stroud, 9 Cir., 1973, 474 F.2d 737, 739. The sentence under Count One is void, and must be vacated.

Short makes but one claim of error that has merit.

Viewed in the light most favorable to the government the facts are as follows: A federally insured bank in San Francisco was robbed by one John Seymour who used a gun during the robbery. Short drove Seymour to the vicinity of the bank and parked his car a block from the bank. During the robbery the hood of Short's car was up and he was apparently repairing it. While he was waiting for Seymour, Short met one Gloria Qualls, who became the key government witness, and offered her a ride. After the robbery Seymour returned to the car, whereupon Short closed the hood and drove off with Seymour and Qualls in the car.

Short dropped Seymour off at Seymour's residence and shortly thereafter Short and Qualls returned to the residence. After a short stay at the house during which Short and Seymour conferred privately with a third person, all four persons in the house went to a bar. Later, Short and Qualls left the bar and drove to a parking lot where they waited until the time that Short was to meet with Seymour again. At the parking lot Short complained to Qualls that he knew that he had not gotten his fair share of the money that was taken. There was no direct evidence that Short knew that Seymour had a gun or that Seymour intended to use it.

Although Short was charged as a principal, the evidence showed that he was an aider and abettor, and the case was tried and the jury was instructed on that theory.

After a period of deliberation the jury returned to the courtroom and asked the judge if "the defendant ha[d] to know Seymour had a gun to be guilty on the second indictment." The judge responded in pertinent part:

"Now, in light of the instructions and the government's case and status of the evidence here that Short's partici-

---

* The Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

pation, if any, was as an aider and abettor, I would further instruct you that it is not necessary that Mr. Short had to have known the exact or precise details by which Mr. Seymour was going to accomplish the bank robbery or what methods he was going to use. What is necessary is that Mr. Short knew that a bank robbery was going to be attempted or accomplished by Mr. Seymour and then that Mr. Short did some affirmative act to attempt to help, attempt to carry that conduct out with the intent that the bank robbery should be successfully accomplished and so, therefore, whatever occurred in the bank, *whether or not he knew that Mr. Seymour was armed or what he was armed with or not, is not necessary, not a necessary element to the crime,* if in fact Seymour did use, commit the bank robbery by the use of a weapon which would put it in the classification of being an armed bank robbery and so it is essential that you bear in mind that Seymour had to have done these acts." (emphasis added)

 This instruction is erroneous because it fails to require the jury to find an essential element of the crime of armed bank robbery as a prerequisite to conviction. It is the aider and abettor's state of mind, rather than the state of mind of the principal, that determines the former's liability. R. Perkins, Perkins on Criminal Law 662 (2 ed. 1969); 1 R. Anderson, Wharton's Criminal Law and Procedure 247 (1957). It is true that the prosecution is not required to prove that the aider and abettor was aware of all of the details of the planned offense, Weedin v. United States, 9 Cir., 1967, 380 F.2d 657, 660. It is also true that the aider and abettor may be liable for the natural and probable consequences of the crime that he aided and abetted.

 However, here Congress has specifically provided for an increased penalty for aggravated forms of bank robbery. An essential element of armed bank robbery as charged here is that the principal was armed and used the weapon to jeopardize the life of the teller. It is this conduct that Short must be shown to have aided and abetted. "[An] aider and abettor is made punishable as a principal . . . and the proof must encompass the same elements as would be required to convict any other principal." Hernandez v. United States, 9 Cir., 1962, 300 F.2d 114, 123. Thus the jury must be told that it must find that Short knew that Seymour was armed and intended to use the weapon, and intended to aid him in that respect. Cf. United States v. Greer, 7 Cir., 1972, 467 F.2d 1064, 1068–1069. The trial judge's instructions specifically dispensed with this element. The government's assertion that this error is harmless is untenable. The conviction must be reversed.

Short raises five other claims of error, none of which is sustainable.

 First, Short argues that the trial judge improperly refused to admit evidence of a prior consistent statement after the government had impeached his testimony. There are two short answers. The letter in question was not a prior consistent statement; it was written after the statement with which Short was impeached was made. The letter was not Short's statement; it was written by Short's attorney.

 Second, Short argues that the indictment should have been dismissed because the testimony before the grand jury was predominately hearsay and the government did not bring the key witness, Qualls, before the grand jury. He argues that in relying on hearsay, the government undermined the spirit and effectiveness of the Jencks Act, 18 U.S.C. § 3500, by denying the defense the opportunity to impeach the key government witness with a Jencks Act statement. The failure of the government to produce key witnesses before the grand jury and its reliance upon hearsay in grand jury proceedings does substantially hinder the advancement of some of the goals of the Jencks Act, Knudsen, Pretrial Disclosure of Federal

Grand Jury Testimony, 60 F.R.D. 237, 252 (1973); United States v. Arcuri, E.D.N.Y., 1968, 282 F.Supp. 347, affirmed, 2 Cir., 405 F.2d 691; cert. denied, 395 U.S. 913, 89 S.Ct. 1760, 23 L. Ed.2d 227. However, the Supreme Court has held and this circuit has consistently reaffirmed that hearsay evidence is admissible before the grand jury. Costello v. United States, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397; United States v. Trenary, 9 Cir., 1973, 473 F.2d 680.

It has been held that, where the prosecutor has deceived the grand jury into believing that it is receiving first hand information rather than hearsay, or where there is a high probability that with direct testimony the grand jury would not have indicted the defendant, a reversal is required. United States v. Estepa, 2 Cir., 1972, 471 F.2d 1132, 1137. We do not face this question here. Short does not argue that such abuses appear on this record.

■■■■ Third, Short argues that because Qualls, the key government witness, was not brought before the grand jury and thus no Jencks Act statement was required of her, she should not have been permitted to testify at the trial. There is no basis in law for this claim.

Fourth, Short claims that the trial judge erred in not granting his motion for a mistrial on the basis of juror misconduct. We do not consider the question; it is not likely to arise again.

■■■■ Fifth, Short argues that the trial judge should have compelled an election by the prosecution between the two counts of the indictment. Taken together, the two counts charge but one offense. But whether the offense and the aggravating conduct are pleaded in two counts or one, it is still proper, indeed necessary, to require a jury to make a separate finding as to each. No "election" is necessary or even appropriate.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.