**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Georgina Diane WROBEL,**
**Defendant—Appellant.**

No. 00–10127.

D.C. No. CR–95–00328–1–PMP.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 2001.

Decided April 2, 2001.

Appeal from the United States District Court for the District of Nevada Philip M. Pro, District Judge, Presiding.

Before REINHARDT, RYMER, and FISHER, Circuit Judges.

## MEMORANDUM *

Georgina Diane Wrobel appeals her conviction and sentence for 65 counts of wire fraud under 18 U.S.C. § 1343, 8 counts of money laundering under 18 U.S.C. § 1956(a)(1)(A), and 1 count of money laundering under 18 U.S.C. § 1957. Wrobel was sentenced to 168 months imprisonment. We have jurisdiction, 28 U.S.C. § 1291, and affirm.

I

Wrobel argues that the evidence was insufficient for conviction on the wire fraud counts as to which no victim testified. However, the evidence shows that AEF and USPI were boiler room operations whose salespersons used the same

fraudulent script (deviating only to make it more deceptive) to solicit contributions over the telephone from out-of-state victims, who then sent checks to the enterprises. The government introduced tape recordings of telephone calls and copies of sales orders and checks. Had no call been made to the particular victims listed in the counts in question, no check would have been received from them and no sales order for them would have been made out.[1] This is ample circumstantial evidence that fraudulent telephone calls were made to the victims listed in all counts upon which Wrobel was convicted of wire fraud.

■■■ Beyond this, Wrobel contends that there was insufficient evidence to support a conviction on any count.[2] We disagree.

■■■ "To establish conspiracy, the government must show: (1) an agreement (2) to engage in criminal activity and (3) one or more overt acts in furtherance of the conspiracy." *United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir.2000). The existence of a conspiracy may be established by direct or circumstantial evidence. *See id.* Here, Wrobel was president of AEF and an employee of USPI who garnered substantial income from both. She set up the AEF office and handled the books. She made such charitable contributions as were made, knowing that little money was actually given away even though this was AEF's stated purpose for being in business. Wrobel typed the fraudulent scripts, was present as they were being read over the telephones, pro-

cessed the victims' checks, and bought and shipped the awards. Thus, the jury could find that Wrobel participated in the scheme to defraud, knowing that AEF and USPI used deceptive scripts to get victims to send money for awards which she knew were worth much less than the amounts solicited.

Wrobel's wire fraud conviction can be sustained either under a *Pinkerton*[3] theory or as an aider and abetter. Under *Pinkerton*, the government needed to prove that the wire fraud occurred within the course of the conspiracy, was within the scope of the conspiracy, could reasonably be foreseen as a necessary or natural consequence of the conspiracy, and that Wrobel was part of the conspiracy. As we have explained, these elements were established.

■■■ For the same reasons, the evidence supports Wrobel's conviction as an aider and abetter. To prove aiding and abetting, the "government must show not only that the defendant participated in the criminal venture, but that he intentionally assisted the venture's illegal purpose." *United States v. Disla*, 805 F.2d 1340, 1352 (9th Cir.1986) (quoting *United States v. Groomer*, 596 F.2d 356, 358 (9th Cir.1979)). Wrobel knew, but did not care, that AEF's and USPI's customers were being defrauded, yet she helped by typing the fraudulent scripts, mailing the prizes, and maintaining the books.

■■■ Finally, there was sufficient evidence to sustain Wrobel's money launder-

---

1. Either the victims were called directly or they called in response to written solicitations that required their telephoning the boiler room number.

2. We review de novo a district court's denial of a motion for acquittal. *See United States v. Neill*, 166 F.3d 943, 948 (9th Cir.), *cert. denied*, 526 U.S. 1153, 119 S.Ct. 2037, 143 L.Ed.2d 1046 (1999). In a motion for acquit-

tal, we examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *See United States v. Blitz*, 151 F.3d 1002, 1006 (9th Cir.1998).

3. 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

ing convictions in violation of both 18 U.S.C. § 1956 and § 1957. To prove a charge of money laundering under 18 U.S.C. § 1956(a)(1), "the government must prove [Wrobel] (1) engaged in a financial transaction which involved proceeds from specified illegal activity, (2) knew the proceeds were from illegal activity, and (3) intended the transaction either to promote the illegal activity or to conceal the nature, source, or ownership of the illegal proceeds." *United States v. Marbella*, 73 F.3d 1508, 1514 (9th Cir.1996). As Wrobel typed the scripts, knew that people were being defrauded, maintained the financial records of the companies, and used the proceeds which she knew had been fraudulently obtained to pay employees and to buy and ship awards, there was sufficient evidence to convict her of money laundering.

■ With respect to the 18 U.S.C. § 1957 count, the evidence shows that Wrobel negotiated a check for funds greater than $10,000, knowing that it came from proceeds of fraudulently obtained money. This suffices for conviction. *See United States v. Messer*, 197 F.3d 330, 341 (9th Cir.1999) ("To prove a conviction under § 1957, the government must establish that Appellants: (1) knowingly engaged in a financial transaction; (2) knew that the transaction involved criminal property; (3) the property's value exceeded $10,000; and (4) the property was in fact derived from a specified unlawful activity.").

## II

Wrobel argues that the *Pinkerton* instruction reduced the government's burden by eliminating its obligation to prove each element of the wire fraud offenses.[4] *Pinkerton* permits a jury to find a defendant guilty of a substantive offense committed by a co-conspirator as long as the offense occurred within the course of the conspiracy, was within the scope of the agreement, and could reasonably be foreseen as a necessary or natural consequence of the agreement. *See Pinkerton v. United States*, 328 U.S. 640, 647–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Olano*, 62 F.3d 1180, 1199 (9th Cir.1995). The Supreme Court having spoken, this court cannot now hold that conviction on a *Pinkerton* theory is unconstitutional, as Wrobel would have us do.

To the extent that Wrobel also contends that it is impossible to determine whether she was convicted under the *Pinkerton* instruction or the standard wire fraud instruction and that the court somehow erred in giving both instructions, she did not object on this basis at trial and we see no plain error. *See United States v. Klinger*, 128 F.3d 705, 711–12 (9th Cir. 1997) (as amended). A defendant may be found guilty of personally committing the offense, as an aider or abetter, or under *Pinkerton*. *See Olano*, 62 F.3d at 1199; *United States v. Castaneda*, 16 F.3d 1504, 1511 (9th Cir.1994).

## III

■ Wrobel maintains that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the 12–level enhancements should be stricken because all facts underlying sentencing enhancements must be found by the jury beyond a reasonable doubt. She is wrong. Even with the enhancements, Wrobel's sentence on each count was less than the statutory maximum. *See United States v. Garcia–Guizar*, 234 F.3d 483, 488–89 (9th Cir.2000) (as amended) (holding that any *Apprendi* error is harmless if the defendant is sentenced to less than the statutory

---

4. Whether a jury instruction violates due process is reviewed de novo. *See United States v.* *Amparo*, 68 F.3d 1222, 1224 (9th Cir.1995).

maximum); *United States v. Egge*, 223 F.3d 1128, 1132 n. 1 (9th Cir.2000) (holding that *Apprendi* does not apply where the defendant was sentenced to less than the statutory maximum).

AFFIRMED.

---

1. The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2). Accordingly, we deny De Cuir's request for oral argument.

2. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.